Good morning. May it please the court. My name is Harvey P. Sackett. I represent the appellant, Marion P. Vick. I would like to reserve two minutes for rebuttal, please. Like two? Two minutes, please. Okay, thank you. Thank you, Ron. Ms. Vick's brief addressed four issues. This morning I'd like to speak to two of those issues, which I believe are intertwined with each other. The first issue involves the Administrative Law Judge's assessment of the opinion of the treating physician, Dr. Katz, Ms. Vick's board-certified orthopedic surgeon. The Administrative Law Judge gave minimal weight to Dr. Katz's opinion and rejected it. Instead, she gave outcome-determinative weight to the testimony of a non-examining medical advisor. Counsel, may I just ask right off, when the non-examining medical advisor reviewed the file, just what was in the medical file at the time the non-examining doctor, Dr. Jensen, I believe, reviewed the file? What was in the file? There was an MRI report, there was a medical source statement completed by Dr. Katz, and there were several treatment notes and progress reports from Dr. Katz. Dr. Jensen didn't specifically identify each item numerically or by letter. He spoke in general terms. Was the file complete at that time, or was it substantially incomplete? Upon reflection, Judge Nelson, the file may have been incomplete. However, Ms. Vick had only started seeing Dr. Katz more recently. She had stopped working in 2001. The first visit with him was in 2002. So there may have been some notes that were, in fact, missing. All right. Well, I think in your briefs, you basically characterized the case as being a disagreement between the treating physician, Dr. Katz, and the non-treating physician, Dr. Jensen. But there were two other physicians involved as well. Is it your position that the medical opinions of the other two physicians should not be accorded any weight? Those should be accorded very little, if any, weight, Your Honor, and the reason being as follows. Okay, good. Tell me that. The only physician who ever treated Ms. Vick, whose records are in this file, were Dr. Katz. Right. I understand that. The other two physicians to which you're referring, Your Honor, were State Agency physicians. Like Dr. Jensen, they did not examine Ms. Vick. More importantly, they never testified. They merely reviewed the file and wrote their comments into the record on behalf of the State Agency. All right, but it's still part of the record, okay? And, you know, obviously from just a legal standpoint, just because one doctor saw Ms. Vick and the others didn't, you don't win just automatically there. You have to tell me why these other doctors have to be discounted, because obviously the ALJ didn't discount them. Certainly. The reason why their opinions should be discounted as well as Dr. Jensen's is as follows. There was no disagreement amongst the four physicians as to the underlying clinical evidence. For example, as I write in my brief, when you compare the objective medical evidence to which Dr. Jensen referred, side by side with the medical evidence that Dr. Katz wrote about, they're basically identical with each other. It wasn't as if Dr. Jensen or the other physicians said, we view the MRI report as negative, however Dr. Katz reviewed it as positive. They were all in agreement. The only place where they disagreed was the degree of limitation. So those reports would in fact constitute a basis for the administrative law judge to reject Dr. Katz's report if, as the Ninth Circuit has said, there was clinical evidence to the contrary or clinical evidence to rebut Dr. Katz's ultimate opinion. But counsel, one of the reasons for my first question was, as I read the record, when Dr. Skorden and Jackson reviewed the file, it was before your client had undergone an MRI. Isn't that correct? That's correct, Your Honor. So they didn't have the MRI in the file when they reviewed the record. That's correct, Judge Nelson. I was speaking more to Dr. Jensen's testimony. All right. At that point in time, the MRI was in fact in the file. Let's just say if we accepted your position, all right, that there was a problem at Step 4, right? If we send this back, does your client automatically get benefits or does the ALJ then have to go to Step 5? We were already at Step 5. Okay. So that's already been taken care of? We would be, if the case were sent back, there are clearly two remedies. Number one would be a remand without right reversal or remand for further administrative proceedings. Now, under Reddick, if the court determines that the administrative law judge improperly rejected Dr. Katz's opinion, Reddick says that given the vocational expert's testimony, based on Dr. Katz's opinion, there's no reason for remand for further administrative proceedings. The case should be paid right now. If, however, the court were to believe that further administrative proceedings were necessary, we would then be at Step 5. Okay. I want to ask you about something the magistrate said in the decision at the magistrate level. He says, second, the medical source statement prepared by Dr. Katz for the ALJ lacks sufficient explanatory remarks substantially to justify its conclusions. That's a big, gobbledygook, bureaucratic sentence. But what's wrong with the magistrate's analysis of and finding fault with Dr. Katz's source statement, medical source statement? Judge Goodwin, what's wrong with that opinion is as follows. On page 27 of the excerpts of record, Dr. Katz itemized commentary in his medical source statement wherein he pointed out the specific clinical signs and findings that sustained his ultimate conclusions insofar as the limitations. For example, he talked about radiculopathy in Dick's right upper extremity. He talked about a central disc bulge. He talked about foraminal narrating. So this was not simply a proverbial checklist opinion with nothing to sustain it. He talked about a significant range of motion limitation in her cervical spine. And most importantly, he talked about the positive MRI results. What's our standard of review of the magistrate's, if that's his finding? I think that is his finding. I think that's what the case turns on, his rejection of Dr. Katz and saying it didn't sufficiently rebut Jensen, who hadn't even seen the patient. What is our standard of review of that statement by the magistrate? It's the NOVA review, Your Honor. Thank you very much. All right. Thank you. Thank you. Good morning. Good morning. My name is John Kusker, and I represent the appellee, Michael J. Astrew, Commissioner of Social Security. I'd like to address first some of the questions that were asked concerning the two medical opinions. Dr. Katz's opinion was that the claimant was incapable of performing even the full range of sedentary work. Dr. Jensen, the testifying medical expert, opined that the claimant could perform a wide range of light work. There's not a mere difference of opinion here, however, because what the medical findings. There are medical findings in the record. They pertain exclusively to the claimant's cervical, her neck impairment. The ALJ accepted limitations to that extent. Dr. Jensen's opinion reflects limitations that are based on the cervical impairment. But there's no objective evidence that supports a limitation on sitting, standing, or walking. And, in fact, the claimant herself doesn't allege limitations to the extent that Dr. Katz said she had. In the certified transcript, not part of the excerpts, but in the certified transcript at page 74, the claimant says that she can walk for, if you'll allow me a minute. The claimant says that she can walk for two miles, that she's able to stand for two hours. She does say that she's limited to sitting for only 15 minutes. But that's in excess of what Dr. Katz says she can do. So substantial evidence supports the administrative law judge's rejection of Dr. Katz. It seems to me, though, that you argue some factors that weren't cited by the ALJ and doesn't aren't you prevented from doing that? I mean, aren't you limited to what the ALJ gave as the specific reasons? I think the true limitation is whatever is reflected in the record. All right. Well, then maybe you just need to tell me what language in the decision of the ALJ can you point to which lists the specific legitimate reasons for rejecting the opinion of Dr. Katz? Because it's my understanding that that's what we're limited to, not you can't come up with other ones pulling it out. Turning to the administrative law judge's decision, on transcript page 13, he gives minimal weight to Dr. Katz's assessment. It is simply not supported by the objective medical findings, and I've just addressed that point. There is no evidence of consistently severe limitations that would preclude the same point, that there are limitations involving the claimant's manipulative abilities, but Dr. Katz's evidence doesn't support limitations on sitting, standing, walking, and so forth. Back to the ALJ. Moreover, the records are devoid of any description of detailed examinations or physical findings. What we have from Dr. Katz are two statements that involve the range of motion. Take exception with a checklist, okay, which is basically a standardized form. You say that that discounts it. I have trouble with that in terms of if there's a form out there, how can you just out of hand discount that? It's merely a matter that this Court has in the past disfavored such checklists, but they are indeed in almost every transcript. I think it's a factor that the Court should consider. Well, he also has two individualized medical reports in the checklist and an explanation of the MSS. So just because, you know, if the form is a checklist, then, you know, I don't see how you can just discount that out of hand. And are you saying that that's one of the? Well, that's, I think, one of the arguments. You say because Dr. Katz's MSS was in the form of a checklist, therefore we should discount it. Do you stand by that argument? I would stand by this Court's precedent that it disfavors such checklists. Okay. You also, I think, make the argument that because he was subject to cross examination, Dr. Jensen, that that is a basis to accept his opinion over Dr. Katz. Well, I believe it's either the Morgan or Andrews case that cites that as an additional rationale for finding that ALJs may properly rely on such evidence. But the primary reason is that it's, that Dr. Jensen's opinion is substantial evidence is that it's supported by the other two non-examining doctors' opinions. And there's nothing, it's not contradicted by all the other evidence of record. It's in conflict with Dr. Jensen's opinion, with Dr. Katz's opinion. As I ask the appellant, I want to ask you the same question. If, in fact, we agree with the appellant for these purposes, does it just go back and award benefits? Or where are we in the process? If we don't, if we don't, do not accept your argument and we feel that the appellant is correct, is it automatically back for benefits? Or does it have to go back for step five? I want to correct a misimpression. The case was decided at the fourth step of the sequential evaluation. If the case were remanded, the court would presumably ask the ALJ to re-evaluate whatever medical evidence was presented at that time. That might lead to another step four decision. Assuming that the case had to be decided at step five, the claimant would not necessarily be disabled at step five. She has a high school education, a history of skilled past work. What we don't know is whether the claimant has any skills that are transferable to other work. And that's a special factor given the claimant's age, which was over 60 for most of this case. Opposing counsel said that step five had already been completed. Well, I don't see that in the record. The ALJ denied the claim on the basis that the claimant was able to perform her past relevant work. And that's the fourth step of the sequential evaluation. There's no alternative finding at the fifth step. And any vocational testimony of any kind? The vocational expert testified as to step four. But I don't believe that there was a question about other jobs. Now, if we were to disagree with you, I would say that the ALJ did not provide Mr. Vicks, Marion Vicks' residual functional capacity is reflected in Dr. Katz's assessment. Is this as a matter of law? And if we take that, there would be no need to remand. If the claimant were incapable of performing even sedentary work, as Dr. Katz opined, that would very likely be the case. All right. Thank you. So to continue, I think, as I said earlier, that it's not merely a difference of opinion between the two doctors, because Dr. Katz's opinion isn't well supported by evidence respecting all of the limitations that he imposes upon the claimant. You have the contrary opinions of three other doctors who considered the same evidence, that the claimant doesn't have limitations on standing, walking and sitting to the extent that Dr. Katz said, similarly with lifting, carrying and other manipulative activities. Who are the three doctors to whom you are referring? Dr. Jensen is the testifying medical expert. All right. And I believe the other two are, excuse me for one moment, Navin Gordon and A.H. Jackson. Okay. But they examined your record before Vic had undergone an MRI. Isn't that correct? There was a reference to the prior MRI, if I recall. And let's turn back to Dr. Katz's first report. I guess my point is, it occurred to me from reviewing the record, what they had reviewed was not a complete record. They did not have the complete record. On the other hand, it appears from the transcript that exhibits one through seven and a half were part of the record when Dr. Jensen testified. So he would have had the opportunity to review that MRI. I'm over time. Does the Court wish to ask further questions? All right. Thank you for your comments. Your Honors, I need to clarify, and I apologize for any confusion that may have caused my response to Judge Callahan's questions about where the case was decided. The case was indeed decided at Step 4. My response was to what happens at this point if we accept Dr. Katz's opinion. At a minimum, we would be at Step 5. So I wanted to clarify that. The second point I'd like to make would be, what's the appropriate remedy if, in fact, the Court accepts Dr. Katz's opinion? As Judge Nelson noted, it's not simply a question of, as a matter of law, Dr. Katz's opinion would warrant a finding of disabled right now. Above and beyond that, when we merge Dr. Katz's opinion and we view the cross-examination testimony of the vocational expert, she specifically stated, if we consider each of the limitations spoken to by Dr. Katz, number one, Ms. Vick cannot return to any of her former employment. More importantly, for purpose of what the remedy should be, she specifically stated, Ms. Vick could not perform any alternate occupations, given her age, education, and previous work experience. And it's for these reasons that, if, in fact, the Court does accept Dr. Katz's report, immediate payment of the compensation would be appropriate. All right. Thank you for your comments. This matter will now stand submitted.
judges: Goodwin, D.W. Nelson, Callahan